STATE OF MAINE                                    UNIFIED COURT
AROOSTOOK, ss.                                    LOCATION: Fort Kent
                                                  DOCKET NO.: CR-22-20403


STATE OF MAINE,                  )
                                 )
v.                               )                ORDER ON DEFENDANT'S
                                 )                MOTION TO DISMISS
SEAN STAMBAUGH,                  )
                    Defendant    )


In September of 2022, the Defendant was issued two summonses for the following offenses: (1) Forgery – 17-A M.R.S. §703(1)(A); and (2) Criminal Attempt - 17-A M.R.S. §152(1)(E). The offense dates were alleged to be November 17, 2021. The Defendant's arraignment was scheduled for November 7, 2022 in Fort Kent.

By Complaint dated October 28, 2022, the State charged the Defendant with one count of Forgery - 17-A M.R.S. §703(1)(A), alleging that the Defendant "with the intent to defraud or deceive another person or government, did falsely make, complete, endorse or alter, or knowingly utter or possess a firearm application, a written instrument." On April 3, 2023, that count of Forgery was dismissed by the State citing "insufficient evidence."

By Complaint dated February 5, 2023, the State charged the Defendant with Count 2: Unsworn Falsification - 17-A M.R.S. §453(1)(C), alleging that the Defendant, "being under arrest for a crime, did give false information concerning his name or date of birth, after having been warned it is a crime to give false information concerning his identity, with the intent to conceal his identity from a law enforcement officer." On May 17, 2023,

that count of Unsworn Falsification was dismissed by the State citing "wrong subsection."

By Complaint dated May 17, 2023, the State charged the Defendant with Count 3: Unsworn Falsification - 17-A M.R.S. §453(1)(A), alleging that the Defendant did "make a written false statement which the Defendant did not believe to be true, on or pursuant to, a form conspicuously bearing notification authorized by statute or regulation to the effect that false statements made therein are punishable."

The Defendant has moved to dismiss Count 3 on the grounds of (1) prosecutorial misconduct, and (2) that the conduct was de minimis. The court conducted a hearing on the motion August 22, 2023. Neither party elected to call any witnesses or present any evidence beyond the pleadings.

### Prosecutorial Misconduct

Regarding prosecutorial misconduct, the Defendant contends the prosecuting attorney made a false material statement under oath in signing in Count 2 of the complaint. *See, 17-A M.R.S. §451.* The contention is that the underlying facts simply do not support the charge. A cursory review of the report and Count 2 makes clear that the prosecutor could not have read *both* of those documents prior to the complaint being filed. The State concedes that Count 2 was the "wrong subsection", which demonstrates that the complaint was certainly not carefully reviewed before it was sworn and filed with the court. *See, M.R.Un.Crim.P. 3(b)*("The complaint shall be made upon oath before the court or other officer empowered to issue warrants against persons charged with crimes against the State."). This situation is ironic in that the Defendant is contending that he

did not carefully review the firearms form that is the subject of count 3, which appears to be what the State did regarding the complaint on Count 2.

The State has dismissed Count 2, so as it relates to the Defendant, the issue is resolved. Although of great concern to the court regarding the integrity of the process, the court finds that on this record there is an insufficient basis[1] for the requested sanction of a dismissal.

## De Minimis

Pursuant to 17-A M.R.S. §12, "[t]he court may dismiss a prosecution if, upon notice to or motion of the prosecutor and opportunity to be heard, having regard to the nature of the conduct alleged and the nature of the attendant circumstances, it finds the defendant's conduct:

A. Was within a customary license or tolerance, which was not expressly refused by the person whose interest was infringed and which is not inconsistent with the purpose of the law defining the crime; or

B. Did not actually cause or threaten the harm sought to be prevented by the law defining the crime or did so only to an extent too trivial to warrant the condemnation of conviction; or

---

[1] The Defendant has raised the issue of "outrageous government conduct." This court finds that the allegations fall short of conduct that would merit dismissal. *See, United States v. Bouchard*, 886 F. Supp. 111, 117–18 (D. Me. 1995)("The doctrine is most often asserted as an alternative basis of dismissal when a defendant asserts entrapment or some other instance of government "overinvolvement" in the actual commission of the alleged crime, particularly in cases where government agents have set up undercover "stings" or used operatives. *See, e.g., Gifford*, 17 F.3d at 470 (child pornography); *Matiz*, 14 F.3d at 82 (narcotics); *Santana*, 6 F.3d at 5 (narcotics); *Penagaricano-Soler*, 911 F.2d at 836 (bank currency reporting); *Panitz*, 907 F.2d at 1270 (narcotics); *Bradley*, 820 F.2d at 7 (narcotics); *Porter*, 764 F.2d at 8 (narcotics).")

C. Presents such other extenuations that it cannot reasonably be regarded as envisaged by the Legislature in defining the crime."

"The language of the statute expressly requires that courts view the defendant's conduct 'having regard to the nature of the conduct alleged and the nature of the attendant circumstances.'" *State v. Kargar*, 679 A.2d 81, 83 (Me. 1996). The Law Court has noted that the factors that are appropriate for consideration in a de minimis analysis include:

> "the background, experience and character of the defendant which may indicate whether he knew or ought to have known of the illegality; the knowledge of the defendant of the consequences to be incurred upon violation of the statute; the circumstances concerning the offense; the resulting harm or evil, if any, caused or threatened by the infraction; the probable impact of the violation upon the community; the seriousness of the infraction in terms of punishment, bearing in mind that punishment can be suspended; mitigating circumstances as to the offender; possible improper motives of the complainant or prosecutor; and any other data which may reveal the nature and degree of the culpability in the offense committed by the defendant." *Kargar*, 679 A.2d 81, 84(*citing State v. Park*, 55 Haw. 610, 525 P.2d 586, 591 (1974).

The Defendant was charged in Count 3 with Unsworn Falsification. Pursuant to 17-A M.R.S. §453(1)(A), "[a] person is guilty of unsworn falsification if . . . [h]e makes a written false statement which he does not believe to be true, on or pursuant to, a form conspicuously bearing notification authorized by statute or regulation to the effect that false statements made therein are punishable." The harm sought to be prevented by the law defining the crime was false information being provided on official forms. The reason for this is obvious, to ensure that individuals can rely upon statements on official forms in order to conduct business or transactions. The fact the purchase of firearms involves not only forms, but also computer background checks does not render false statements on the forms less significant. The Defendant was a convicted felon. He

completed the form stating that he was not a felon.[2] The fact that he was attempting to purchase a firearm, given the prohibition on his use or possession of firearms due to his conviction is perplexing. In the event the firearms dealer relied solely on the form, a firearm may have been sold and transferred to the Defendant, who was prohibited from the use or possession of firearms. The firearms dealer's compliance with the computer background check was the only measure that prevented the actual harm sought to be prevented from materializing.

The limited data available that might reveal the degree of culpability in the offense committed by the Defendant suggests that this was an effort to try to obtain the firearm and see what happens. The record reflects no mitigating factors regarding this particular Defendant. Likewise, the record reflects no improper motive of the complainant or prosecutor.

Unlike *Kargar*, where the Law Court found that the legislature had not envisioned the extenuating circumstances of that case, this is a case where a convicted felon attempted to purchase a firearm and provided false information on the form to do so. This is precisely the type of conduct sought to be prevented by the law.

Based on the review of the record presented, the statutes, and consideration of the relevant caselaw, the court does not find that the defendant's conduct qualifies as de minimis. The Defendant's motion to dismiss is hereby DENIED.

Dated: 9/7/23

Justice, Maine Superior Court

---

[2] There is a contention in the material that the Defendant claimed he stated he was a felon, but that his poor eyesight may have caused the confusion.